# KLAFTER OLSEN & LESSER LLP
### ATTORNEYS AT LAW

Two International Place • Suite 350 • Rye Brook, NY 10573
914-934-9200 • Fax 914-934-9220 • www.klafterolsen.com

June 1, 2011

<u>VIA ECF</u>
Honorable Andrew L. Carter, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re: Ravenell et al. v Avis Budget Car Rental LLC, et al.
          No. CA 08-cv-2113

Dear Judge Carter,

We represent the Plaintiffs in this action for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Since the Court conference on May 18, 2011, the parties have made no progress in resolving the discovery disputes that were briefly discussed at that conference. Accordingly, Plaintiffs are bringing this letter motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37(a), to compel responses to certain discovery requests propounded by Plaintiffs in their Requests for Production of Documents and Interrogatories dated January 14, 2011 (combined "Discovery Requests").[1]

    <u>Background</u>

By way of background, during a status conference on December 3, 2011, Your Honor directed that the parties depose 20 opt-ins and that each party select 10 of these deponents. Plaintiffs served the Discovery Requests at issue regarding these 20 opt-in deponents on January 14, 2011. On March 4, 2011 Defendants responded (Responses attached as Exhibits A and B, respectively).

On March 24, 2011, Plaintiffs wrote to Defendants to address a number of deficiencies in Defendants' responses to Plaintiffs' Discovery Requests. Following that letter (and other letters between the parties),

---

[1] We will be submitting a separate letter to address concerns regarding the Defendants' Privilege Log.



NEW YORK • NEW JERSEY • WASHINGTON, DC

Hon. Andrew L. Carter, Jr.
June 1, 2011
Page 2 of 6

and after various meet and confer sessions both before and after the May 18, 2011 Court conference, the issues addressed in this letter remain unresolved.

Pursuant to Fed. R. Civ. P. 26(b)(1) "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The Second Circuit has noted that "[t]he scope of discovery in a federal action is broad providing that, unless otherwise limited by court order, a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  See Fed. R. Civ. P. 26(b)(1)."  Sokol v. Wyeth, Inc., 2008 U.S. Dist. LEXIS 60976 (S.D.N.Y. Aug. 4, 2008) *7.  Thus, and as discussed below, the Defendants responses are deficient and under Fed. R. Civ. P. 37(a) the Defendants should be compelled to provide meaningful responses.  An assessment of Defendants' responses should be guided by Rule 37(a)(4), which states that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." In the alternative, Plaintiffs request that the affirmative defenses that are pertinent to the requests at issue be stricken, as is discussed below.

<u>Interrogatories Nos. 7 and 8</u>

The crux of this case involves Plaintiffs' claims that, as shift managers, they were misclassified as exempt under the FLSA and the NYLL.  Defendants assert that Shift Managers are, in fact, exempt under one or more exemptions:  "... the manager exemption, the administrative exemption, the executive exemption and the professional exemption". *See* Docket No. 58 at 11 (Defendants' Answer).

Directly addressing these issues, Interrogatory No. 7 requests that Defendants "[i]dentify each person who participated in the decision to classify Shift Managers as exempt employees under the FLSA and/or the NYLL including, but not limited to, Labor Analysts or persons in a comparable position employed by Defendants."  Interrogatory No. 8 requests that Defendants "[i]dentify the person or persons most



instrumental in Defendants' decision to classify Shift Managers as exempt employees under the FLSA and/or the NYLL."

Defendants initially objected to these requests as overbroad and unduly burdensome as seeking irrelevant information, and seeking information protected from disclosure by attorney-client privilege. After numerous meet and conferrals and, having agreed to consider their response in greater detail, Defendants "supplemented" their response by stating that "[t]he decision to classify Shift Managers as exempt employees under the FLSA is a process that involves all management-level employees at Avis, including Shift Managers who perform exempt duties." (*See* Exhibit C at 2).

As the Court may recall, during the May 18, 2011 conference, Defendants offered two justifications for this response: (1) that the decisions were made a long time ago; and (2) that, in fact, all "management" level employees at Avis took part in making this decision. Both justifications are inadequate and the Court should compel Defendants to fully and properly respond.

As to Defendants' first position (that it cannot recall who was involved in the exemption status determination), notwithstanding that nowhere in Defendants' responses does it mention that it is unable to identify the individuals involved in classifying shift managers as exempt because the decision was made years ago, Defendants' position ignores the fact that Avis admits that it has reviewed the exemption status of Shift Managers and did so in recent years (including through a FLSA audit). Thus, within memory, there were individuals involved in reviews of the exemption status and Defendants should be able to name those individuals.

Defendants' second response is – to put it bluntly – absurd and implausible. Avis operates almost 1,000 locations nationwide. Each of those locations employs several "management-level employees". In other words, Avis is claiming that hundreds – if not thousands -of individuals somehow decided to classify Shift Manages as exempt. This is patently false and constitutes stonewalling and an "evasive or incomplete" response, in violation of Fed. R. Civ. P. 37(a)(4). The Shift Manager exemption is a blanket one and – as evidenced by the FLSA audit – some person or persons in authority at Avis reviewed the relevant factors and



Hon. Andrew L. Carter, Jr.
June 1, 2011
Page 4 of 6

made the decision to classify Shift Managers as exempt and to continue such classification to the present day. This is a discovery response Plaintiffs' counsel routinely have made in similar cases and no other defendant has ever pretended that thousands of people together made the decision.

Defendants cannot have it two ways--they should be either compelled to respond, meaningfully, to these requests (which literally go to the heart of the case) or, in the alternative, their affirmative defenses that they acted in good faith and did not act willfully in (mis)classifying shift managers should be stricken. Plaintiffs cannot challenge these defenses if Avis refuses to identify who in the company made the relevant decisions.

### Document Requests Nos. 13 and 16

As noted, Defendants have asserted numerous affirmative defenses that they did not willfully violate the FLSA and/or any state laws and that they acted in good faith in classifying shift managers as exempt. *See* Docket No. 58 at 11, 12, and 15 (Second, Third, Ninth, Tenth, Nineteenth and Twenty-First Defenses). These are core affirmative defenses because, under the FLSA, a willful violation of the statute extends the statute of limitations for claims to three years while a failure to show a good faith defense subjects an employer to liquidated damages.

Accordingly, in their Document Request No. 13, Plaintiffs request "[a]ll documents that refer or relate to Defendants' decision to classify Shift Managers as exempt from overtime". Likewise, Document Request No. 16 asks for "[a]ll documents relating to all good faith efforts that Defendants have made to comply with the Fair Labor Standards Act and/or the New York Labor Law".

Defendants originally did not respond to these requests but instead raised only objections. In Plaintiffs' letters and during our meet and conferrals, we stressed to Avis' counsel that "these documents go directly to the Defendants' various affirmative defenses" and called on the Defendants to "withdraw [their] objections and immediately produce all responsive documents in [their] possession, custody and control." In response, Defendants' advised "[they are] neither withdrawing its affirmative defense of good faith nor conceding that it willfully violated



NEW YORK • NEW JERSEY • WASHINGTON, DC

the FLSA." Defendants' also supplemented their responses to these two requests by directing "Plaintiff to all documents produced by Avis thus far in this litigation." (*See* Exhibit C at 1). This response is confusing and all-but meaningless.

To date Avis has produced almost 120,000 documents. These documents include such diverse materials as: (1) emails exchanged between Plaintiffs and co-workers or Plaintiffs and supervisors; (2) letters from customers to Avis commending the work done by employees at various levels - Rental Sales Agents and Shift Managers; (3) job applications and accompanying resumes; and, (4) training manuals. On their face it becomes apparent that such documents are simply not responsive to the above-referenced requests – or their responsiveness is so attenuated as to be meaningless. In other words, were this case to proceed to trial, it beggars belief that Avis would use such documents (much less all of them) to support its affirmative defenses. Rather, Avis would use a circumscribed set of documents to support its defenses and manifestly it is those documents that Avis should identify, that is the documents that it actually, materially and relevantly believes supports these defenses. But Avis' game of hiding the ball as to what it may use to support those defenses is untenable. Discovery is not a game by which a party hides its evidence by saying "the entirety of everything we do is our defense" and then, at trial, pulls out what it will actually rely upon. (Notably, again, these same discovery requests have been used in other cases and defendants have not been confused by them but have answered with lists of documents.)

In short, Defendants should be ordered either to fully and properly respond to Plaintiffs' discovery requests or ordered to withdraw the affirmative defenses of good faith and lack of willfulness asserted in Defendants' answer.

### One Open Issue

Although the Plaintiffs believe that Defendants' response to a Supplemental Merits Interrogatory, (served on March 21, 2011) is deficient, we are not presently bringing this to the Court's attention. During the parties' most recent meet and confer (on May 20th), Defendants indicated that they will supplement their response to this Interrogatory, however, due to the circumstances explained at the recent



NEW YORK • NEW JERSEY • WASHINGTON, DC

Hon. Andrew L. Carter, Jr.
June 1, 2011
Page 6 of 6

Status Conference; namely, Defendants' counsel's vacation and the birth of Mr. Shapiro's child, Defendants have not been able to provide this promised supplementation. As a courtesy to Defendants, we have not discussed this Interrogatory herein, and will address it, if necessary, after we have received this supplemental response.

                                        Respectfully Submitted,

                                        Seth R. Lesser

Cc:  All Counsel via ECF



NEW YORK • NEW JERSEY • WASHINGTON, DC