

**Littler Mendelson, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321

Kimberly J. Gost
267.402.3007 direct
267.402.3000 main
kgost@littler.com

June 10, 2011

**VIA ECF**

Honorable Andrew L. Carter, Jr.
United States Magistrate Judge
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re: **Ravenell, et al v. Avis Budget Car Rental LLC, et al.**
    **Case No. 08-cv-2113-SLT-ALC**

Dear Magistrate Judge Carter:

This Firm represents Defendants in the above-referenced matter. Pursuant to Your Honor's May 18, 2011 instructions, we write to oppose Plaintiffs' letter motion to compel production of certain documents and its letter concerning Defendants' privilege log, both dated June 1, 2011. For the following reasons, each of those submissions lack merit, and the requests set forth in them should be denied in their entirety.

### A. **Plaintiffs' Motion To Compel Discovery Responses Should Be Denied.**

#### 1. **Defendants' Responses to Interrogatories Nos. 7 & 8 Are Sufficient.**

Plaintiffs' characterizations of Defendants' discovery responses are irrelevant, as those written responses speak for themselves. However, Plaintiffs' purported explanation of Defendants' position for those responses misstates what Defendants' counsel stated, and therefore merit clarification.

Defendants take the position that the decision to classify shift managers as exempt was made a long time ago, and that it is unlikely that there was a single meeting or series of meetings during which that decision took place. Therefore, it would be impossible, within reason, to identify "each person" who participated in that decision, or who was "most instrumental," however that term is defined, in Defendants' classification decision. For those reasons, Defendants properly responded that Plaintiffs' requests were overbroad, that responding thereto would be unduly burdensome, and that they did not seek information relevant to the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

It is well established that an individual's actual job duties, not his job description or the mere decision to classify him as exempt, is what controls the determination of exempt status. This does not change simply because a decision was made to classify an entire job title as exempt.

Honorable Andrew L. Carter, Jr.
June 10, 2011
Page 2

As Defendants articulated during the parties' May 18 conference, the identity of who made the decision to classify these individuals as exempt is irrelevant to the ultimate legal point of whether shift managers are, indeed, exempt from overtime under federal and New York law, because actual job duties are what is controlling. Equally important, the answers to these interrogatories do not govern whether Defendants acted in good faith or had reasonable grounds for believing that it had complied with the law.

Plaintiffs' reference to Avis' review of the exemption status of shift managers, including through an FLSA audit, is unavailing. As Defendants stated during the May 18, 2011 call, the audits were conducted in a privileged setting, and Defendants do not wish to waive that privilege. Defendants raised privilege as an objection in their initial responses, and the results of the audits were listed on Defendants' privilege log. Defendants will still be able to establish their good faith without disclosing this privileged information.

As stated in their letter, Plaintiffs were unsatisfied with Defendants' initial interrogatory responses, and pressed Defendants for further clarification. In addition to carrying forward their previous objections, Defendants attempted to identify all individuals with knowledge of facts that support Defendants' position that shift managers were properly classified, and who may be called to testify at trial. This was not done to sandbag or to confuse, but rather to bring to the forefront the most important issues. Again, the applicability of a particular exemption is based on actual job duties and, therefore, who made the decision is irrelevant. Whether litigants in other matters prosecuted by Plaintiffs' counsel have objected to these overbroad requests is also irrelevant.

Plaintiffs' closing point – that the Court should strike Defendants' affirmative defenses that they acted in good faith – is unsupportable. The jury should be permitted to consider the evidence before it, including live testimony about the tasks performed by shift managers and documentary evidence presented by Defendants, to determine whether Defendants carried their burden on proving good faith. Notably, Plaintiffs do not cite any case precedent in support of their request for this extraordinary action. As such, Defendants respectfully submit that the Court abstain from ruling on whether Defendants can advance a good faith defense when resolving this routine discovery dispute.

**2.     Defendants' Responses to Document Requests Nos. 13 & 16 Are Sufficient.**

In addition to propounding patently overbroad interrogatories, Plaintiffs also propounded patently overbroad document requests, namely "all documents" that refer or relate to Defendants' classification decision and their assertion of good faith compliance with the law. Contrary to Plaintiffs' assertion, Defendants are not playing games. Asking for an entire universe of documents on a complex decision is, by nature, overbroad, and responding thereto would be unduly burdensome. Again, the applicability of a particular exemption is based on actual job duties. As with Plaintiffs' improper interrogatories, whether litigants in other matters prosecuted by Plaintiffs' counsel have objected to these overbroad requests is

Honorable Andrew L. Carter, Jr.
June 10, 2011
Page 3

irrelevant. In their letter motion, Plaintiffs impliedly acknowledged the improper nature of their requests and clarified them.

Now, Plaintiffs state that "Avis would use a circumscribed set of documents to support its defenses and manifestly it is those documents that Avis should identify, that is the documents that it actually, materially and relevantly, believes supports these defenses." This is still an improper request. First, the documents Defendants will ultimately rely upon at trial to support its defenses have not yet been selected by Defendants' counsel. Second, even if they had been identified, counsel's document/exhibit selection process for trial is driven by their mental impressions of the relative importance of the documents and their mental impressions of the law. Therefore, that decision is protected as attorney work product. By moving to compel the identification of those documents, Plaintiffs are requesting that the Court require Defendants to violate the attorney-work product privilege and identify for Plaintiffs' counsel those documents Defendants' counsel deems most important. Such a request is not legally supportable (and Plaintiffs do not even cite any case law in support of their position) and should be denied.

**B.     Defendants' Privilege Log Is Adequate.**

    **1.     The Documents on the Privilege Log Related to Defendants' Position Classification Audit are Protected by the Attorney-Client, Work Product and/or Self-Critical Privileges.**

The attorney client, work product and self-critical privileges protect against the disclosure of all documents identified in Avis' privilege log related to the position classification audit ("audit documents") conducted by Cendant Corporation, Avis's corporate predecessor, in 2005. These documents are listed on the first seven pages of Avis' privilege log, beginning with document bates numbered AVP0001-AVP0009 and ending with document bates numbered AVP0471.

This audit was conducted at the direction of the Company's legal counsel (at that time), Senior Vice President and Employment Counsel Kirsten Hotchkiss, in response to the increasing number of wage and hour lawsuits being filed against companies, including other Cendant entities.[1] Avis evaluated the shift manager position as part of this audit.

    **a.     The Attorney-Client & Work Product Privileges Apply Here.**

The audit documents contain communications received and/or sent by Avis' in-house attorneys regarding the audit and reclassification of positions, employees working with and at the direction of Avis' in-house attorneys on the audit, and the analysis and work product of these individuals. For example, many of the entries cited by Plaintiffs as failing to qualify as privileged are communications from or to Rosalie Shoeman, Employment Counsel for Avis,

---

[1] A separate position classification audit was conducted in 2002-2003. Privileged documents from the earlier audit are included in the second and third entries on the log, at documents bates numbered AVP0010-0015 and AVP0016-AVP0029.

Honorable Andrew L. Carter, Jr.
June 10, 2011
Page 4

and/or Kirsten Hotchkiss, Cendant's (again Avis' corporate predecessor) Senior Vice President and Employment Counsel. Other documents cited by Plaintiffs contain the notes and work product of Ms. Shoeman. Such communications are unquestionably protected by the attorney-client and work product privileges. *See Deel v. Bank of America*, 227 F.R.D. 456, 464 (W.D. Va. 2005) (holding that employer did not waive attorney client privilege with regard to range of documents prepared during FLSA investigation into job classification); *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433 (N.D. Cal. 2010) (holding communications to or from the employer's in-house counsel related to internal audits were subject to the privilege). Likewise, communications about the audits among non-attorneys are protected by the privilege to the extent the individual who originated the communication had notice or some communication from counsel that the specific audit to which the communication was related was initiated by counsel and was subject to the privilege.

Despite Plaintiffs' claims to the contrary, the attorney client and work product privileges also protect those documents authored by non-attorney Avis employees. A "corporation does not waive its privilege when non-lawyer employees send or receive communications because corporate communications which are shared with those having need to know of the communications are confidential for purposes of the attorney-client privilege." *Deel*, 227 F.R.D. at 460-61 (holding that draft communications and email outlining communication to managers who will complete questionnaires, as well as other communications and documents regarding reclassification of job codes, were protected from disclosure by the attorney client privilege). Moreover, the work-product doctrine applies not only to documents created by an attorney, but also to documents prepared by the client. *See Lugosch v. Congel*, No. Civ. 00-CV-0784, 2006 U.S. Dist. LEXIS 53116, at *16 (N.D.N.Y. Mar. 7, 2006). The work product doctrine protects not only the opinions, theories and strategies of an attorney, but also extends to the facts selected and relied upon by the attorney. *E.B. v. N.Y. City Bd. of Educ.*, No. 02-5118, 2007 U.S. Dist. LEXIS 95931, at *15-*16 (E.D.N.Y. Sept. 27, 2007).

Avis has not waived the attorney client privilege with regard to any of the audit documents merely because there are numerous recipients on some of the audit communications. Courts determining whether dissemination of a document to employees amounts to waiver of an entity's attorney-client privilege apply "a 'need to know' standard: did the recipient need to know the content of the communication in order to perform her job effectively or to make informed decisions concerning, or affected by, the subject matter of the communication?" *E.B.*, 2007 U.S. Dist. LEXIS 95931 at *16 (quoting *Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 464 (W.D.N.Y. 2006)). Here, the employees who received the audit documents or communications were working on the audit, providing relevant information for the audit, or worked with individuals affected by the audit, and thus satisfy the "need to know" standard. *See First Chicago International v. United Exchange Co.*, 125 F.R.D. 55, 57-58 (S.D.N.Y. 1989) (holding that Plaintiff made a sufficient showing that documents it claims are privileged would not have been created had the corporation not needed the advice of counsel).

Honorable Andrew L. Carter, Jr.
June 10, 2011
Page 5

### b. Self-Critical Analysis Is Applicable Here.

Courts in the Second Circuit have applied the self-critical analysis privilege in cases when "an intrusion into the self-evaluative analyses of an institution would have an adverse effect on the [evaluative] process, with a net detriment to a cognizable public interest." *Flynn v. Goldman, Sachs & Co.,* No. 91-0035, 1993 U.S. Dist. LEXIS 12801, at *1 (S.D.N.Y. Sept. 16, 1993). "A 'privilege of self-critical analysis' or a 'self-evaluative privilege' serves the public interest by encouraging self-improvement through uninhibited self-analysis and evaluation." *In re Crazy Eddie Sec. Litig.,* 792 F. Supp. 197, 205 (E.D.N.Y. 1992). In *Crazy Eddie*, this Court held that plaintiffs failed to demonstrate a need for the privileged documents that outweighed defendants' claim of privilege where the information underlying the privileged documents were available. Here, as in *Crazy Eddie*, Defendants have produced the facts underlying the audit, i.e. the audit questionnaires filled out by shift managers. Therefore, Plaintiffs cannot demonstrate a need for the privileged audit documents concerning the results of the audit.

### c. Defendants Have Produced Documents That Reflect Facts Underlying The Privileged Audit Documents.

Avis produced the questionnaires shift managers completed during this audits, which contained purely factual information from such shift managers. These documents are listed as the last two entries on the seventh page of the privilege log at AVIS040285-AVIS040350. Plaintiffs' counsel conveniently fails to note this important fact in their letter, most likely because it undermines their argument that Defendants are improperly using the aforementioned privileges to shield the facts underlying the privileged documents.

### 2. Non-Audit Documents.

In responding to Plaintiffs' Requests for Production Nos. 4 and 18, Defendants took a broad view of what was responsive with regard to Plaintiffs' and Opt-Ins' job duties. For example, Defendants decided that <u>all emails</u> received and sent by Plaintiffs and Opt-Ins at their work email addresses were responsive documents related to their job duties. Defendants took this position not to overwhelm Plaintiffs, but to ensure that all documents that may be responsive are produced.

The first five entries on page eight of the privilege log (AVP490-AVP501) contain privileged documents from Avis' file regarding Opt-In Camille Gillett's employment discrimination charge filed with the City of Orlando Office of Human Relations. These internal communications, litigation hold memoranda, and draft position statements are protected by the work-product privilege because they were prepared for litigation. Avis produced the majority of Ms. Gillett's EEO file, which contained non-privileged documents such as the final draft of the position statement and exhibits submitted to the City of Orlando Office of Human Relations, at documents bates numbered AVIS0076166 through AVIS0076239.

Honorable Andrew L. Carter, Jr.
June 10, 2011
Page 6

Other than the privileged portions of Ms. Gillett's EEO file, the remaining documents identified on pages eight through fifteen of the privilege log are emails that Plaintiffs and Opt-Ins received in their capacity as managers for Defendants and which contain privileged information. These communications are, therefore, privileged and the Court should not require Defendants to produce them. The attorney-client privilege "extends to communications with employees 'beyond the control group' because middle-level — and indeed lower-level — employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." *Winans v. Starbucks Corp.*, No. 08-3734, 2010 U.S. Dist. LEXIS 134136, at * 6-*7 (S.D.N.Y. Dec. 15, 2010). For example, many of the privileged documents cited by Plaintiffs are litigation hold letters issued for this action. *See* PRIV0000005-11; PRIV0000036-38; PRIV0000042-44; PRIV0000047-49; PRIV0000051-83; PRIV0000095-107. Other emails cited by Plaintiffs contain legal advice regarding currency conversion (PRIV0000012-29); legal advice regarding disposal of personally identifiable and other confidential customer information (PRIV0000030-31; PRIV00000108-152); legal advice regarding overdue safety recalls (PRIV0000084-88); and emails from outside counsel and/or between managers discussing ongoing litigation (PRIV0000032-35; PRIV0000089-90).

Defendants should not be punished for taking such a broad view of which documents are responsive to Plaintiffs' request for all documents related to the Plaintiffs' and Opt-Ins' job duties by being forced to produce privileged emails and documents that the Plaintiffs and Opt-Ins received in their capacity as managers for Defendants, many of which are only tenuously relevant to the instant action.

*     *     *

For the foregoing reasons, Defendants respectfully request that Your Honor deny Plaintiffs' motion to compel and reject their request that Your Honor enquire further with regard to Defendants' privilege log. Please let us know if Your Honor requires any additional information.


Respectfully submitted,

LITTLER MENDELSON, P.C.

Kimberly J. Gost

cc:   Plaintiffs' Counsel (via ECF)