UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MATT RAVENELL, et al., individually
and on behalf of all other persons similarly
situated,

      Plaintiffs,            Memorandum & Order
                         08-CV-2113 (SLT)

  -against-

AVIS BUDGET GROUP, INC. et al.,

      Defendants.
-------------------------------------------------------x
*Gold, S., United States Magistrate Judge*:

    Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"). Defendants contend that some or all of the plaintiffs are exempt from the Act's coverage. During the course of discovery, defendants provided plaintiffs with an extensive privilege log asserting that various documents were protected from disclosure by the attorney-client privilege, the protection afforded to work product, and the self-critical analysis privilege. *See* "Ninth Revised Privilege Log," Docket Entry 342-1. After plaintiffs challenged defendants' privilege log by moving to compel, Docket Entry 311, then-presiding Magistrate Judge Carter ordered submission of the documents claimed to be privileged for *in camera* review and additional briefing, Docket Entry 340. Defendants subsequently filed papers responsive to Judge Carter's Order.[1]

    After the case was reassigned to me, I examined the documents submitted for *in camera* review and held a teleconference with the parties. At that time, I concluded that the attorney-client privilege had been properly invoked with respect to most of the documents I had reviewed.[2] I questioned, however, whether the privilege had been waived with regard to

---

[1] Defendants' submission in this regard is referred to as "Defs. Mot.," Docket Entry 342.
[2] All questions of privilege with regard to the documents listed in defendants' Ninth Revised Privilege Log, with the exception of those discussed in this Order, were resolved during that conference.

communications had or shared with Organizational Concepts International ("OCI," later known as "PayCraft"), a company that conducted audits on defendants' behalf. I invited further briefing to address whether the involvement of OCI was consistent with maintenance of the attorney-client privilege pursuant to *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), or whether disclosure to OCI constituted a waiver of that privilege. *See* Mar. 6, 2012 Minute Entry, Docket Entry 360.

Following that teleconference, defendants submitted additional briefing and an updated privilege log regarding communications involving or shared with OCI. *See* "Defs. Mem.," Docket Entry 361, and "OCI Privilege Log," Docket Entry 361-1. Plaintiffs have filed their opposition. *See* Docket Entry 362. After reviewing this briefing and the underlying documents, I am not persuaded that the attorney-client privilege, or the work product protection or self-critical analysis privilege, applies to the documents related to OCI. I therefore order that the defendants disclose documents and revise their privilege log to the extent indicated below.

It is well-established that the attorney-client privilege "protects confidential communications between client and counsel for the purpose of obtaining or providing legal assistance." *In re Country of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (citing *United States v. Constr. Prod. Research*, 73 F.3d 464, 473 (2d Cir. 1996)). "The privilege is intended to encourage clients to be forthcoming and candid with their attorneys so that the attorney is sufficiently well-informed to provide sound legal advice." *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). Nevertheless, the privilege is narrowly construed, and the party seeking to invoke it bears the burden of establishing that it applies. *See In County of Erie*, 473 F.3d at 418.

Generally, disclosure of communications to persons outside of the attorney-client relationship waives the privilege. *See United States v. Mejia*, 655 F.3d 126, 134 (2d Cir. 2011) (noting that "it is vital to a claim of privilege that the communications between client and attorney were made in confidence and have been maintained in confidence" (quoting *In re Horowitz*, 482 F.2d 72, 81-82 (2d Cir. 1973))). Courts have carved out an exception to the waiver rule, however, that applies where disclosures to a third party are necessary to facilitate communication between attorney and client. As with the attorney-client privilege generally, "[w]hat is vital to the privilege is that the communication must be made *in confidence* for the purpose of obtaining legal advice *from the lawyer*." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (quoting *Kovel*, 296 F.2d at 922) (emphasis in original). *Kovel*, in first establishing this extension of the privilege, drew an analogy between the attorney's agent, in that case an accountant, and an interpreter:

> This analogy of the client speaking a foreign language is by no means irrelevant to the appeal at hand. Accounting concepts are a foreign language to some lawyers . . . . Hence the presence of an accountant . . . while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege . . . the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit. By the same token, if the lawyer has directed the client . . . to tell his story in the first instance to an accountant engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice, communications by the client reasonably related to that purpose ought to fall within the privilege.

296 F.2d at 922.

Cases following *Kovel* have continued to emphasize that this extension of the privilege applies only where the third party "[enables] counsel to understand aspects of the client's own communications that could not otherwise be appreciated." *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000). It is not sufficient that the third party's involvement is simply useful to the lawyer; it must be necessary "to improve the comprehension

3

of the communications between attorney and client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999).  A Court in this Circuit recently found that the attorney-client privilege was vitiated by disclosure to a third party hedge fund manager where there was no indication that the lawyer could not evaluate the client communication without the assistance of the hedge fund manager.  *In re Refco Sec. Litig.*, --- F.R.D. ----, 2011 WL 4527287, at *3 (S.D.N.Y. Sept. 30, 2011) (noting that, while "it appears that [the attorney] relied on [the agent's] experience and specialized knowledge," "[w]hat does not appear . . . is any evidence that there was information [the attorney] *could not understand* without [the agent] translating or interpreting raw data for him" (emphasis in original)).  *See also Ackert*, 169 F.3d at 140 (holding that the privilege was destroyed because the third party agent was not acting "as a translator or interpreter of client communications"); *Steinfeld v. IMS Health Inc.*, 2011 WL 6179505, at *4 n.3 (S.D.N.Y. Dec. 9, 2011) (finding that, to the extent defendant argued that *Kovel* applied, communications at issue were not privileged because the consultant "did not explain unfamiliar concepts to counsel").

The case that has arguably extended the privilege the furthest, *In re Grand Jury Subpoenas Dated Mar. 24, 2003*, 265 F. Supp. 2d 321 (S.D.N.Y. 2003), nonetheless limited the privilege to situations where an agent performs a role beyond the expertise of counsel but nevertheless crucial to providing competent legal advice.  *See id.* at 326, 330 (discussing the lawyers' need in this case for "outside help" and the centrality of that assistance to the lawyers' "ability . . . to perform some of their most fundamental client functions").  The reach of that case may be further limited by its context: the Court couched its finding in the narrow scenario of public relations consultants assisting lawyers during a high profile grand jury investigation.  *See id.* at 331 (holding as follows: "(1) confidential communications (2) between lawyers and public relations consultants (3) hired by the lawyers to assist them in dealing with the media in cases

4

such as this (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's legal problems are protected by the attorney-client privilege").

Defendants in this case have failed to demonstrate that the involvement of OCI or its corporate successor was necessary for effective communication between counsel and client. Defendants have identified two major functions of OCI during the audits of employee roles. First, OCI created a "an online platform for the dissemination and collection of questionnaires for the 2005-06 audit." Shoeman Aff. ¶ 6.[3] Second, OCI summarized the collected data in a chart, and, based on criteria provided by defendants' counsel, "made a preliminary assessment of whether the individuals who completed the questionnaires met the requirements of an exempt position" under the FLSA. *Id.* ¶ 7. Shoeman and her colleagues in the legal department then made the final determinations with regard to exempt status. *Id.* ¶ 8.

The first use of OCI's expertise—the implementation of a system to send out questionnaires and receive respondents' answers—arguably falls within the boundaries of *Kovel*. Defendants aver that they lacked the technological capability to carry out this task given the number of employees to be surveyed. *See* Defs. Mem. at 2. As such, OCI's role was akin to that of an interpreter—a necessary facilitator in the communication between counsel and client. However, defendants do not establish why OCI had any need to review the *contents* of the responses to the questionnaires to perform this function.

OCI's second role, organizing responses to the questionnaires and making a preliminary assessment of whether that data supported a classification of an employee as exempt or non-exempt, does not fit so easily into the *Kovel* model. While defendants state that they provided

---

[3] "Shoeman Aff." refers to the affidavit of Rosalie J. Shoeman, who was, at all times relevant to this suit, Senior Counsel at Cendant Corporation, now known as Avis Budget Group. The affidavit is labeled as Exhibit B to defendants' memorandum and is located at Docket Entry 361-2. Although this affidavit mentions only the 2005-06 audit in this regard, the defendants' memorandum and the content of the OCI privilege log suggests that OCI played similar roles during both the 2002-03 and 2005-06 audits.

the standards by which OCI should classify the data, and that OCI was not hired to give the defendants legal advice, *see* Shoeman Aff. ¶¶ 7, 8, defendants nonetheless required OCI to examine the employee responses and make initial statutory classifications that in-house counsel had the ability to make themselves. The preliminary assessments neither "improve[d] the comprehension of the communications between attorney and client," *Ackert*, 169 F.3d at 139, nor provided advice outside the general expertise of attorneys yet essential to the ability of defendants' lawyers to provide legal advice, *In re Grand Jury Subpoenas*, 265 F. Supp. 2d at 330. Given the strong policy mandating that the protection of privileges should be narrowly construed, *see, e.g.*, *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991), there is no justification for applying the privilege here. I therefore conclude that in-house counsel's communications with OCI waived the attorney-client privilege.

Defendants' most recent submission does not touch upon the other privileges claimed in their earlier papers, work product and self-critical analysis, *see* Defs. Mot. at 5-8 (arguing, in this earlier filing, for the application of work product protection and the self-critical analysis privilege); they are, however, claimed in defendants' OCI Privilege Log. Accordingly, I will address them here.

First, work product protection does not apply because defendants have not demonstrated that the documents at issue were prepared in anticipation of litigation. Disclosure of attorney work product is governed by Federal Rule of Civil Procedure 26(b)(3) and attendant case law. The Rule states that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless that party makes a showing of "substantial need." Courts have clarified that the "anticipation of litigation" standard means that work product is protected only if it was created "because of anticipated

litigation and would not have been prepared in substantially similar form but for the litigation." *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). This protection extends to documents created for prior litigation. *See Fine v. Facet Aerospace Prods. Co.*, 133 F.R.D. 439, 445 (S.D.N.Y. 1990) (citing *F.T.C. v. Grolier*, 462 U.S. 19, 25 (1983)).

Defendants do not claim that the 2002-03 audit was conducted in order to prepare for litigation; they state only that the 2005-06 audit was "shaped" by a California Department of Labor Standards Enforcement ("DLSE") investigation and later litigation in that state. Defs. Mot. at 5. This contention does not satisfy the requirement that the document would not have been produced "but for" the litigation. *See Adlman*, 134 F.3d at 1195; *see also Calabro v. Stone*, 225 F.R.D. 96, 99 (E.D.N.Y. 2004) (noting that the "party asserting the work-product protection bears the burden of establishing that a document was prepared principally or exclusively to assist in anticipated litigation" (internal citations and quotation marks omitted)). As defendants claim only that the DLSE investigation and the state litigation caused "the audit to take on a particular sense of purpose," Defs. Mot. at 5, they do not meet the "heavy burden . . . of demonstrating that [the documents] would not have been prepared in 'essentially similar form irrespective of the litigation.'" *GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 2011 WL 6074275, at *3 (S.D.N.Y. Dec. 6, 2011) (quoting *Adlman*, 134 F.3d at 1202) (other internal citation omitted). Indeed, an employer complying with the FLSA must identify its exempt and non-exempt employees in the ordinary course of its business and regardless of whether or not it faces litigation.

Finally, defendants invoke the self-critical analysis privilege. This privilege "protect[s] a party's confidential analysis of its own performance when that analysis tries to correct problems, on the assumption that disclosure of the analysis during litigation may deter future candid

reviews." *In re Ashanti Goldfields Sec. Litig.*, 213 F.R.D. 102, 104 (E.D.N.Y. 2003) (internal citation omitted). It is unsettled whether this privilege is recognized in this Circuit. *MacNamara v. City of New York*, 2007 WL 755401, at *3 (S.D.N.Y. Mar. 14, 2007) (citing cases). Moreover, to the extent it is recognized, this privilege has been applied only when there is a strong public interest "in preserving the free flow of the type of information sought." *Id.* (quoting *Mitchell v. Fishbein*, 227 F.R.D. 239, 252 (S.D.N.Y. 2005)).

Given the lack of full acceptance of this privilege, and because this case does not involve the strong public interest at issue, for example, in the paradigmatic self-critical privilege case of review of medical decisions, I decline to apply it here. *Cf. Francis v. United States*, 2011 WL 2224509, at *6 (S.D.N.Y. May 31, 2011) (noting the uniform state acceptance of the medical peer review privilege). In the alternative, I also reject the defendants' contention that the privilege applies because, having presented only a conclusory assertion that the impetus to conduct such audits would be chilled in the future, *see* Defs. Mot. at 7, they have not made the requisite "detailed and convincing showing" required to invoke it. *E.B. v. N.Y.C. Bd. of Educ.*, 233 F.R.D. 289, 296 (E.D.N.Y. 2005); *cf. King v. Conde*, 121 F.R.D. 180, 193 (E.D.N.Y. 1988) (declining to apply the "official information privilege" based on defendants' contention that their future candor would be chilled absent "empirical evidence" of this chilling effect). Defendants' blanket assertion that disclosure of employment audit documents in any case would discourage evaluation of employee position classifications does not satisfy this standard.

In sum, defendants have not shown that they are entitled to the attorney-client or self-critical analysis privileges, or to work product protection, as to the documents related to OCI/PayCraft. Therefore, defendants are ordered to produce, with appropriate redactions or exclusions of attorney thought processes, any documents previously withheld as privileged that

were received from, sent to, or shared with OCI and to update their privilege log accordingly.

Defendants shall complete these disclosures by April 20, 2012.

SO ORDERED.

Dated:   Brooklyn, New York
         April 5, 2012

                                        /s/
                                        STEVEN M. GOLD
                                        United States Magistrate Judge

*U:\rmk 2011-12\Ravenell v Avis Budget Grp\Ravenell v Avis Attorney Client Privilege M&O.docx*