UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---

MATT RAVENELL, TRAVIS LUBBERS, and
TYLER TALKINGTON, Individually and on
Behalf of All Other Persons Similarly Situated,

        Plaintiffs,

   v.

AVIS BUDGET CAR RENTAL, LLC and
AVIS RENT A CAR SYSTEM, LLC,

        Defendants.

Index No. 08-cv-02113-SLT-SMG

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF MOTION FOR DECERTIFICATION**

TABLE OF CONTENTS

PAGE

I. Plaintiffs Never Identify Either Of The Exemptions On Which Avis Relies And Explain How, On The Basis Of Common Evidence, A Factfinder Could Conclude That Plaintiffs As A Group Did Or Did Not Perform Duties That Satisfied The Exemption ................................ 1

II. Because Plaintiffs Never Address The Evidence Through The Prism Of Either Exemption, The Scattershot "Evidence" To Which Plaintiffs Point Would Not Allow A Factfinder To Conclude That Plaintiffs' Primary Duties, As A Whole, Do Or Do Not Meet The Exemption ................................ 3

III. Plaintiffs Mischaracterize The Legal Standard, The Record, And Avis' Brief .............................. 4

    A. Plaintiffs Mischaracterize The Legal Standard ................................ 4

    B. Plaintiffs Mischaracterize The Record ................................ 5

    C. Plaintiffs Mischaracterize Avis' Brief ................................ 8

IV. Plaintiffs Do Not Refute The Conclusion That Individualized Defenses Favor Decertification ................................ 9

V. Conclusion ................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. T.J.Maxx Corp.*,
   2013 U.S. Dist. LEXIS 81942 (E.D.N.Y. June 8, 2013) ....................................................... 3

*Aquilino v. Home Depot, U.S.A., Inc.*,
   2011 U.S. Dist. LEXIS 15759 (D.N.J. Feb. 15, 2011) ............................................................ 4

*Blake v. Hewlett-Packard Co.*,
   2013 U.S. Dist. LEXIS 98690 (S.D. Tex. July 11, 2013) ................................................ 2, 4, 9

*Clarke v. JPMorgan Chase Bank, N.A.*,
   2010 U.S. Dist. LEXIS 33264 (S.D.N.Y. Mar. 26, 2010) ....................................................... 1

*Damassia v. Duane Reade, Inc.*,
   2007 U.S. Dist. Ct. Motions LEXIS 64604 (S.D.N.Y. Oct. 12, 2007) .................................... 2

*Espenscheid v. DirectSat USA, LLC*,
   705 F.3d 770 (7th Cir. 2013) ............................................................................................. 5, 10

*Farmer v. DirectSat USA, LLC*,
   2013 U.S. Dist. LEXIS 79825 (N.D. Ill. June 6, 2013) ........................................................ 10

*Gardner v. Western Beef Properties, Inc.*,
   2013 U.S. Dist. LEXIS 56511 (E.D.N.Y. March 25, 2013) .................................................... 4

*Green v. Harbor Freight Tools USA, Inc.*,
   888 F. Supp. 2d 1088 (D. Kan. 2012) ..................................................................................... 4

*Guillen v. Marshalls of Mass., Inc.*,
   2012 U.S. Dist. LEXIS 91639 (S.D.N.Y. July 2, 2012) .......................................................... 3

*Hundt v. DirectSat USA, LLC*,
   2013 U.S. Dist. LEXIS 92458 (N.D. July 1, 2013) ................................................................ 5

*Mike v. Safeco Ins. Co.*,
   274 F. Supp. 2d 216 (D. Conn. 2003) ..................................................................................... 1

*Moore v. PNC Bank, N.A.*,
   2013 U.S. Dist. LEXIS 74845 (W.D. Pa. May 29, 2013) .................................................... 3, 4

*Ruggles v. Wellpoint, Inc.*,
   272 F.R.D. 320 (N.D.N.Y. 2011) ............................................................................................ 3

*Scott v. SSP America, Inc.*,
   2011 U.S. Dist. LEXIS 32819 (E.D.N.Y. Mar. 29, 2011) .................................................. 5, 9

*Tracy v. NVR, Inc.*,
   2013 U.S. Dist. LEXIS 62407 (N.D.N.Y. Apr. 29, 2013) ....................................................... 4

**Other Authorities**

29 C.F.R. § 541.2 .................................................................................................................... 1

29 C.F.R. § 541.2 .................................................................................................................... 1

29 C.F.R. § 541.100 ................................................................................................................ 5

29 C.F.R. § 541.100 ................................................................................................................ 2

29 C.F.R. § 541.202 ................................................................................................................ 5

29 C.F.R. § 541.700 ................................................................................................................ 5

Four points are warranted in reply to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Decertification ("Opposition"). *First*, Plaintiffs never identify the exemptions on which Avis relies and then explain how, on the basis of common evidence, a factfinder could conclude that Plaintiffs *en masse* did or did not perform duties that satisfied either exemption. *Second*, because Plaintiffs never address the evidence through the prism of either exemption, the scattershot "evidence" to which Plaintiffs point does not allow for a collective determination of whether all Plaintiffs' job duties satisfied either exemption. *Third*, Plaintiffs mischaracterize the legal standard (by insinuating that the exemptions required unilateral authority), the record (by claiming that diverse testimony is uniform), and Avis' brief (by falsely accusing Avis of "mis-citations"). *Fourth*, Plaintiffs never explain how, where the evidence is diverse and several Plaintiffs have credibility problems, it could comport with due process to prevent Avis from examining each Plaintiff at trial about his or her job duties.

**I.  Plaintiffs Never Identify Either Of The Exemptions On Which Avis Relies And Explain How, On The Basis Of Common Evidence, A Factfinder Could Conclude That Plaintiffs As A Group Did Or Did Not Perform Duties That Satisfied The Exemption**

Whether a particular employee was misclassified as exempt under the FLSA depends on whether "the employee's [compensation] and duties meet the requirements of the" exemption on which the employer relies. 29 C.F.R. § 541.2. Where (as here) compensation is not in dispute,[1] whether the plaintiff's job duties rendered him exempt dictates liability. *See Clarke v. JPMorgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 33264, at **61-62 (S.D.N.Y. Mar. 26, 2010) ("[T]he exempt status of a given employee depends upon an analysis of the employee's *job duties*," and not on whether the plaintiff and any other employee were subject to a "company policy or decision") (emphasis in original) (quoting 29 C.F.R. § 541.2 and *Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003)). It follows that courts may not try collectively an FLSA misclassification case unless common evidence would dictate whether the class's job duties rendered them non-exempt:

> Because [t]he determination of whether an exemption applies to a given individual . . . is a very fact-specific exercise, a common exemption

---

[1] The executive and administrative exemptions at issue here also have a minimum-salary requirement, but there is no dispute as to whether that requirement has been met.

> analysis can be applied to a group of individuals only if evidence of the dispositive facts can be applied to all such individuals. In misclassification cases, the dispositive facts are those that define an employee's primary duties. . . . Therefore, for the purpose of certifying a collective action, a critical question is whether there is sufficient similarity of job duties to allow collective determination of exemption status.

*Blake v. Hewlett-Packard Co.*, 2013 U.S. Dist. LEXIS 98690, at *28 (S.D. Tex. July 11, 2013) (internal quotations and citations omitted). Indeed, unless "a common analysis [of, among other things, job duties] based on representative proof can be applied to all members of the putative class at the merits stage . . . there would be no efficiency in—and, therefore, no justification for—collective adjudication." *Id.* at *17.

To answer that "critical question" regarding job duties, of course, a plaintiff must first identify the exemption(s) relied on by the defendant, identify the evidence pertinent to those exemption(s), and then explain why a factfinder could conclude on the basis of *common* evidence that no member of the collective satisfied the exemption(s). *See id.* at *33 ("[W]hether Plaintiffs' proposed class definition enables collective adjudication depends on whether that definition and the evidence supporting it can be used to reach a common conclusion under the tests" applicable to the exemptions.) Here, however, Plaintiffs never even attempted to accomplish these things through their Opposition.[2] Although Avis relies strongly on the executive exemption found at 29 C.F.R. § 541.100, and Avis' opening brief is geared largely toward explaining why the evidence pertaining to that exemption differs radically among the members of the collective, **there is no reference to the executive exemption anywhere in Plaintiffs' Opposition**. Although Plaintiffs at least mention the administrative exemption (also relied on by Avis), Plaintiffs never tailor their analysis to that exemption, either. Because Plaintiffs never address whether there is a sufficient similarity of job duties to allow a collective determination of their eligibility for either exemption, they lose. *See id.* at *40 (inability to prove that the evidence allows "a common exemption analysis" precludes even conditional certification).

---

[2] This deficiency cannot be attributed to ignorance. In the brief that opposing counsel filed in *Damassia v. Duane Reade, Inc.*, 2007 U.S. Dist. Ct. Motions LEXIS 64604 (S.D.N.Y. Oct. 12, 2007), plaintiffs explained why a factfinder could conclude on the basis of common evidence that no member of the collective satisfied the relevant exemptions. Plaintiffs' failure to do the same thing here can only be construed as a tacit admission of their inability to do so.

**II. Because Plaintiffs Never Address The Evidence Through The Prism Of Either Exemption, The Scattershot "Evidence" To Which Plaintiffs Point Would Not Allow A Factfinder To Conclude That Plaintiffs' Primary Duties, As A Whole, Do Or Do Not Meet The Exemption**

Plaintiffs begin their Opposition by pointing out the obvious: Avis, like any corporation, has common policies, rules, and training applicable to certain positions. (Opp., pp. 2-14.) If that were all that it took to justify a collective trial, virtually no corporation would ever win a motion for decertification.[3] The existence of such commonalities, however, does not matter *unless* those common factors "correlate" with shared job duties. *Id.* at **28-29.[4] Illustrating the point is *Moore v. PNC Bank, N.A.*, 2013 U.S. Dist. LEXIS 74845, at **11-12 (W.D. Pa. May 29, 2013), where putative class members were subject to an "across-the-board exemption policy," had a common job description, had to meet common prerequisites for the position, were subject to uniform, "detailed companywide policies," and had to complete the same "mandatory corporate training courses developed by [the defendant's] corporate office." *Id.* at **11-12. Yet, because there was no indication that those factors correlated to similar job duties, the district court denied even conditional certification. *See id.* at **16-18; *Ahmed v. T.J.Maxx Corp.*, 2013 U.S. Dist. LEXIS 81942, at **30-38 (E.D.N.Y. June 8, 2013).

Here, Plaintiffs point to no evidence that any alleged[5] common policies, rules, or training resulted in the members of the collective performing similar job duties.[6]  Accordingly, the existence of such

---

[3] Recent case law establishes that employers win most motions for decertification. In 2012, for example, the employer prevailed on 16 of the 24 motions for decertification our research uncovered. Plaintiffs continue to ignore the many decisions decertifying collective actions and, instead, continue to cite to the same cases over and over again in an attempt to gloss over the overwhelming number of decisions favoring Avis' position on decertification.

[4] *See also Guillen v. Marshalls of Mass., Inc.*, 2012 U.S. Dist. LEXIS 91639, at *3 (S.D.N.Y. July 2, 2012) ("[T]he mere fact of a common FLSA-exempt designation, job description or uniform training is insufficient to find [plaintiffs] 'similarly situated' for FLSA purposes."); *Ruggles v. Wellpoint, Inc.*, 272 F.R.D. 320, 341 (N.D.N.Y. 2011) (Regardless of whether a common policy applied to plaintiffs, in a misclassification case "'courts must still ask where the individual employees actually spent their time.'").

[5] Not all of the alleged commonalities are actually common. The "uniform" Management Training Curriculum to which Plaintiffs point, for example, was not implemented until 2011 (*see, e.g.*, Exh. 33, MTC Training Roadmap noting 2011 implementation date, AVIS0785271-AVIS0785288) and was not provided to all class members (e.g., Exh. 27, Turner Dep. Tr. 8-9 (left company in 2008); Exh. 11 O'Connell Dep. Tr. 9 (left company in 2010); Exh. 9, O'Neida Dep. Tr. 8 (left company in 2010). Even those who took MTC classes, moreover, did not necessarily take the same classes.

[6] Indeed, in some cases, the existence of the alleged commonality on which Plaintiffs rely bears no logical relationship to the existence of common job duties. For example, Plaintiffs write that "Avis' top-down

commonalities is immaterial. Indeed, the procedural posture of this case (before the Court on a motion for decertification), makes the conclusion even more overwhelming here than it was in *Moore* (where the court was deciding a motion for conditional certification). Finally, regarding the alleged "blanket" decision to maintain the exempt classification of the collective (Opp., pp. 17-18), the existence of a common exemption decision, standing alone, does not warrant proceeding to a collective trial. The most that the existence of a common exemption decision could prove is that Plaintiffs were subject to a common policy.[7] Even where such a common policy exists, however, to warrant a collective trial, Plaintiffs must *also* prove that their job duties were "sufficiently similar to allow a common exemption analysis." *Blake*, 2013 U.S. Dist. LEXIS 98690, at *40.[8] Again, as Plaintiffs have not attempted to meet that burden, they may not proceed to a collective trial. *See id.*

### III. Plaintiffs Mischaracterize The Legal Standard, The Record, And Avis' Brief

Plaintiffs' Opposition is full of subtle, and not so subtle, invitations for the Court to apply a heightened legal standard that would allow Plaintiffs to proceed to a collective trial without first proving that Plaintiffs' job duties are similar enough that there would be efficiency in a collective adjudication. Plaintiffs also mischaracterize the record and Avis' arguments in support of decertification.

#### A. Plaintiffs Mischaracterize The Legal Standard

Plaintiffs argue that "SMs cannot **ultimately** decide" the following issues: "lunch or break

---

control ensures that each location operates the same way and that SM duties are uniform." To support this assertion, Plaintiffs point to testimony that Avis has uniform "operating objectives." (Opp., p. 3.) But the notion that uniformity of "objectives" suggests uniformity of duties is a *non sequiter*: that two people have the same objective does not mean that they perform the same duties as a means of pursuing that objective. *E.g.*, neurosurgeons and anesthesiologists may share a common objective (a healthy patient), but they perform very different job duties in pursuit of that objective.

[7] On pages 13-14 of their Opposition, Plaintiffs go to great lengths to disparage Avis' audit of the shift manager position in 2005-2006 and to undermine Defendants' good faith and willfulness defenses. Defendants disagree strongly with Plaintiffs characterization of the audit and the merits of its good faith and willfulness defenses.

[8] In addition to *Blake*, recent case law, as opposed to the older cases on which Plaintiffs rely, makes clear clear that a similarity of job duties is a *sine qua non* for a collective trial of misclassification claims. *See, e.g., Tracy v. NVR, Inc.*, 2013 U.S. Dist. LEXIS 62407, at *14 (N.D.N.Y. Apr. 29, 2013); *Gardner v. Western Beef Properties, Inc.*, 2013 U.S. Dist. LEXIS 56511, at **20-23 (E.D.N.Y. Mar. 25, 2013); *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1099-1100 (D. Kan. 2012); *Aquilino v. Home Depot, U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 15759, at **20-21 (D.N.J. Feb. 15, 2011).

schedules for hourly employees"; "to approve vacation for hourly employees"; "to **unilaterally** discipline hourly employees"; "how to train hourly employees"; "to hire hourly employees"; or "to approve overtime for hourly employees." (Opp., pp. 8-9 (emphasis added).) Plaintiffs further argue that they did not "**regularly** interview, schedule, review performance, train, or make recommendations about employment decisions." (Opp., p. 10 (emphasis added).)

Plaintiffs' creative use of adverbs, however, distorts the legal standard. For an employee to be exempt, it is not necessary that the employee have "ultimate" or "unilateral" power. *See* 29 C.F.R. § 541.100 (for executive exemption, employee only has to make "suggestions and recommendations" regarding important employment decisions); 29 C.F.R. § 541.202 (for administrative exemption, it is sufficient that employee "affect, interpret, or implement" policies).[9] Nor is it necessary, for the "primary duty" requirement, that the employee engage in exempt activities "regular[ly]"; rather, it is sufficient the employee engage in exempt activities and that those activities be, for example, "important." 29 C.F.R. § 541.700; *Scott v. SSP America, Inc.*, 2011 U.S. Dist. LEXIS 32819, at *27 (E.D.N.Y. Mar. 29, 2011).

Plaintiffs also inflate the legal standard by arguing that the test applicable to a motion for decertification is "considerably less stringent" than an analysis under Federal Rule of Civil Procedure 23 of whether a case should proceed to a factfinder as a class action. (Opp., p. 14.) Plaintiffs have pointed to no binding authority for this proposition, however, and the correct and more current view is that espoused in *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013): "[T]here isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences." *Id.* at 772. Regardless of whether a case were to reach a factfinder via the collective- or class-action mechanisms, the result of certifying a class with disparate job duties would be the same: the factfinder would have to wade through a morass of contradictory evidence in a vain attempt to reach a "common" conclusion about whether all plaintiffs were misclassified.

---

[9] *See also Hundt v. DirectSat USA, LLC*, 2013 U.S. Dist. LEXIS 92458, at *19 (N.D. July 1, 2013).

B.     **Plaintiffs Mischaracterize The Record**

At pages eight through ten of the Opposition, Plaintiffs argue that "Plaintiffs cannot ultimately decide" a host of bullet-pointed issues. With four specific exceptions (discussed below), however, Plaintiffs do not take issue with Avis' citation to evidence proving that, for many of these factors, Plaintiffs *did* testify to disparate duties. For the remaining factors, an examination of the record easily reveals that there are Plaintiffs who had substantial input or, in some cases, could even "ultimately decide," the issue in question, which means that a disparity of evidence exists as to those points also.

- **Lunch/Break Schedules:** Mr. Bremerkamp scheduled meal and rest breaks as well as time off for hourly employees. (Exh. 16, Bremerkamp Dep. Tr. 187-88, 190). Mr. Haugh made the lunch schedule at his airport and enforced it as well. (Exh. 34, Haugh Dep. Tr. 110-111). Mr. Haugh even posted a memorandum regarding lunch breaks, which was not reviewed before he posted it. (Exh. 34, Haugh Dep. Tr. 143-144). Ms. Dayhuff occasionally coordinated her employees' lunch breaks to meet business needs when necessary. (Exh. 35, Dayhuff Dep. Tr. 55). Mr. Castro sometimes divided up his employees for lunch breaks. (Exh. 36, Castro Dep. Tr. 65). Mr. Buckley not only scheduled employees for lunch and meal breaks, but he also changed the breaks as necessary. (Exh. 37, Buckley Dep. Tr. 62-63).

- **Vacation:** Mr. Rahim could and did approve vacations for hourly employees. (Exh. 38, Rahim Dep. Tr. 219-220, 222). Similarly, Mr. Buckley could grant or deny employee's requests for vacation, without first consulting with an Airport Manager. (Exh. 37, Buckley Dep. Tr. 68-69). Mr. Huynh likewise could schedule employees for vacation. (Exh. 20, Huynh Dep. Tr. 68-69 and Exh. 39, Huynh Dep. Tr. 91).

- **Discipline:** Plaintiffs do not contest the disparities among Plaintiffs regarding discipline listed at pages 11-12 of our opening brief. If more examples of such disparities were needed, we would point, for example, to Mr. Glass, who gave verbal warnings to employees for poor attendance, as did Mr. Castro. (Exh. 40, Glass Dep. Tr. 148); Exh.

6.

36, Castro Dep. Tr. 77, 79). Also, Ms. Dayhuff issued discipline to employees for attendance (Exh. 35, Dayhuff Dep. Tr. 78-79) and Mr. Sharrow disciplined employees for lateness, sleeping, and excessive callouts (Exh. 41, Sharrow Dep. Tr. 84).

- **Training**: Plaintiffs do not contest the disparities among Plaintiffs regarding training listed on page 11 of our opening brief.

- **Hiring:** As noted in our opening brief, and as Plaintiffs have not refuted, Mr. Haugh was responsible for each step of the hiring of three employees, from when he posted a job opening through when he decided whom to hire. (Exh. 4, Haugh Dep. 86-90.) Beyond that, Plaintiffs fail to refute Avis' citations to the record for the proposition that many opt-in Plaintiffs interviewed employees and weeded out those they deemed unsuitable for hiring. Indeed, the very evidence that Plaintiffs cite to show that Plaintiffs, as a group, had "little input into" hiring proves the opposite point. The parentheticals at page 9, note 16 of the Opposition show that, while some Plaintiffs claimed they had no role in interviewing, others admitted to conducting one or more interviews of job applicants.

- **Overtime:** Plaintiffs do not contest the disparities among Plaintiffs regarding the ability to call for overtime listed on pages 12-13 of our opening brief. Further, there were times when Mr. O'Connell "would have to make that call" for overtime. (Exh. 42, O'Connell Dep. 69-70.) Ms. Dayhuff also called employees to work overtime when needed. (Exh. 35, Dayhuff Dep. Tr. 53). So did Mr. Mitchell. (Exh. 43, Mitchell Dep. Tr. 21-22).

- **Scheduling:** Plaintiffs do not contest the disparities among Plaintiffs regarding scheduling authority listed on pages 12-13 of Avis' opening brief. For an additional example, Mr. Marques approved an employee's voluntary time off, which allowed the employee to leave early without incurring points. (Exh. 44, Marques Dep. Tr. 122).

- **Termination:** Plaintiffs largely do not contest the disparities regarding termination responsibilities listed on pages 17-18 of Avis' opening brief. For an additional example,

Ms. DeJesus recommended terminations "all the time." (Exh. 45, DeJesus Dep. Tr. 127).

- **Performance Reviews:** On page nine of our opening brief, Avis established that many Plaintiffs frequently filled out Coaching & Feedback forms, through which they reviewed employees. Plaintiffs denigrate those reviews as "merely a check list of boxes" (Opp., p. 12), but do not contradict Avis' evidence that those reviews can affect promotion, raises, and termination and required Shift Managers to make subjective judgments.

C.   **Plaintiffs Mischaracterize Avis' Brief**

Plaintiffs claim that Avis' motion is "replete with mis-citation to the record," and claim that they could "almost fill the rest of [their] brief" with such "erroneous citations." (Opp., pp.18-19.) All that this argument proves, however, is that Plaintiffs have elastic definitions of "mis-citation" and "almost." Plaintiffs point to only four supposed "examples" of mis-citations. (Opp., p. 18.) Even if those examples were valid, Plaintiffs' accusation that Avis' motion is "replete with mis-citation to the record" and that Plaintiffs could "almost" write a brief on that issue would be hyperbole. None of Plaintiffs' examples, however, withstands scrutiny, which makes Plaintiffs' argument something worse than hyperbole.

*First*, Plaintiffs dispute that Mr. Huynh stated that he could terminate and discipline employees. Mr. Huynh stated in his 2010 self-appraisal, however, that he "initiated at least 4 terminations and suspensions" of employees. (Exh. 20, Huynh Dep. 185 & Dep. Exh. 20, p. AVIS0784802.) Mr. Huynh also stated in the same document that he "removed most of [the] lead drivers from their positions" when he was dissatisfied with their performance. (Exh. 20, Huynh Dep. 185 & Dep. Exh. 20, p. AVIS0784802.). Avis did not put any words in Mr. Huynh's mouth: he testified that *he* wrote his self-appraisal, and that *he* then discussed the self-appraisal with his supervisor. (Exh. 20, Huynh Dep. 185). Further, the allegedly contrary testimony to which Plaintiffs point, where Mr. Huynh testified that he "consulted" with other managers before taking action, pertained to disciplining employees for theft, and did not qualify the assertions that Mr. Huynh made in his self-appraisal. (Exh. 39, Huynh Dep. 126-27.)

*Second*, Plaintiffs' allegation that Avis made a "blatant representation" with respect to Mr. Huynh's experience conducting over 30 interviews is belied by Mr. Huynh's own testimony, where he

8

testified in plain English that he did exactly that: "Q: So between 30 and 50 employees you interviewed? A: Yes." (Exh. 20, Huynh Dep. 71.) Further, although Plaintiffs point to pages 71 and 89 of Mr. Huynh's deposition transcript for the proposition that all of those interviews occurred on "one occasion," an "open house," the pages in question do not say that. In fact, the term "open house" appears nowhere in Mr. Huynh's testimony. What Mr. Huynh actually said was that he spent eight hours interviewing 30-50 applicants in May 2011 (Exh. 20, Huynh Dep. 70-71), which strongly supports exempt status. *See Scott*, 2011 U.S. Dist. LEXIS 32819, at \*\*13-14 (exempt employee interviewed no more than one applicant).

*Third*, although Plaintiffs belittle Mr. Talkington's testimony pertaining to his experience screening job applicants by pointing out that Mr. Talkington relayed recommendations about the applicants via "sticky note[s]" (Opp., p. 18), Plaintiffs do not show where Avis mis-cited the record or explain the significance of the medium through which Mr. Talkington communicated his views. *Fourth*, in footnote 24, Plaintiffs take issue with Avis' argument that Mr. Walker testified about a collaborative hiring and firing process. That is, however, exactly what Mr. Walker did, testifying that he interviewed applicants for a job position and that he and "HR . . . [then] decided together on one of the two." (Exh. 46, Walker Dep. 106.) He also testified that a termination resulted from the investigation that he and another Shift Manager conducted of an instance of theft. (Exh. 46, Walker Dep. 120-26.)

In sum, although Plaintiffs' accuse Avis of "miscitation to the record" (Opp., p. 18), it is actually Plaintiffs who have committed this error and submitted misleading arguments.

**IV.     Plaintiffs Do Not Refute the Conclusion That Individualized Defenses Favor Decertification**

Plaintiffs argue that Avis has no right to examine each Plaintiff individually about his job duties and that it does not matter that Avis intends to probe the credibility of Plaintiffs who either told self-serving lies in the past about their exalted, managerial roles at Avis (when that suited them) or are lying now about their allegedly menial roles at Avis (when that suits them). (Opp., pp. 19-20). Where there is varying evidence among the plaintiffs, however, "an individual inquiry into each plaintiff's job duties is required." *Blake*, 2013 U.S. Dist. LEXIS 98690, at \*29. Although Plaintiffs cite contrary cases, Plaintiffs never explain how those cases establish that it would be consistent with due process to force Avis to

9.

prove – based on evidence germane to a handful of widely disparate Plaintiffs – that all Plaintiffs were properly classified.  Nor do Plaintiffs explain how it could comport with due process to prevent Avis from examining credibility on an individual basis.  Finally, Avis' argument pertaining to damages and variations in the amount of overtime Plaintiffs claims to have worked has been reinforced by *Farmer v. DirectSat USA, LLC*, 2013 U.S. Dist. LEXIS 79825, at **20-21 (N.D. Ill. June 6, 2013).  Plaintiffs' failure to address in detail the recent case that supports Avis' argument, and rely on decades-old precedent in opposition to that argument, must mean that they could not muster a plausible position in opposition..

**V.  Conclusion**

Nothing in the Opposition changes the determinative conclusion: there is no common evidence that would allow two different factfinders (the Court and the jury) to determine whether each Plaintiff was classified correctly as exempt.  Plaintiffs have not submitted, and if ordered to do so will not be able to submit, a trial plan that disproves the point.[10]  Accordingly, this Court must decertify this action and dismiss the claims of the opt-in Plaintiffs.

Date:    August 2, 2013

/s/ Kimberly J. Gost
Kimberly J. Gost (KG0881)
Matthew J. Hank (*admitted pro hac vice*)
Nina K. Markey (*admitted pro hac vice*)
Sarah Bryan Fask (*admitted pro hac vice*)
Holly E. Rich (HR1208)
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
267.402.3000 – phone
267.402.3131 –fax

Attorneys for Defendants

---

[10] Notwithstanding Avis' invitation to submit a trial plan, Plaintiffs have failed to do this.  The Court may require a trial plan, "given the difficulty of trying a class action." *Espenscheid*, 705 F.3d at 775.

10.